## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Gordon Miles, | Case No. 0:19-cv-1567 (JNE/KMM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| LLoyd Hartlieb, et al. | |
| Defendants. | |

This matter is before the Court on two motions: a Motion to Dismiss filed by Defendants Johnston, Moser, Puffer, Giannini, Crider, David Miles, Taylor, Johnson, Whipple, Berg, and John Doe OSI Officer (in their official capacity only) (collectively, "the MSOP Defendants") (ECF No. 29), and a Motion for Judgment on the Pleadings filed by the Defendants John Doe Police Officer and Bogenholm (collectively, "the Moose Lake Defendants") (ECF No. 50). After careful consideration, the Court recommends that both motions be GRANTED.

## I. FACTS

Mr. Miles is a civil detainee at the Minnesota Sex Offender Program ("MSOP").[1] Mr. Miles alleges that clients at MSOP "are dangerous sexual predators that have an utter lack of control over their sexual impulses." (Amended Compl. ¶ 20.) The claims that Mr. Miles alleges here arise out of a single alleged incident that occurred at the MSOP Moose Lake "Complex 1," which is composed of five living units. (Id. ¶ 21.) Mr. Miles states that all five units of Complex 1 are released to meals at the same time, that clients line up outside of the dining hall, and that no security counselors are stationed outside of the dining hall. (Id. ¶ 22.) He asserts that "it has been an ongoing problem that the gay clients at MSOP-ML kiss and grab at each other's private parts while waiting in the food line for their meals." (Id. ¶ 23.) He

---

[1] The civil detainees at MSOP are commonly called "clients."

1

alleges that despite MSOP Policy 420-5016, "Touch," MSOP staff do not attempt to intervene in this behavior. (*Id.* ¶ 24.) Further, Mr. Miles states that there are no security counselors in the dining hall, save for one officer who checks off names of clients waiting to receive their meals. (*Id.* ¶ 25.)

The events underlying Mr. Miles's complaint began on May 15, 2019. He alleges that defendants Wayne Whipple and Craig Berg, MSOP security counselors, released the five living units of Complex 1 for dinner. (*Id.* ¶ 26.) He states that as he was standing in line, he saw "the gay guys…kissing and grabbing at each other as usual" when Lloyd Hartlieb, another inmate, "grabbed and kneaded [Mr. Miles's] right breast." (*Id.*) Mr. Miles immediately pushed Mr. Hartlieb off of him, which was the end of the encounter. (*Id.*)

Once he returned to his living unit, Mr. Miles alleges that he informed defendant Scott Giannini,[2] a lead security counselor in charge of his unit's security (*id.* at ¶ 10), that he had been sexually assaulted by Mr. Hartlieb and wanted to file a police report. (*Id.* at ¶ 27.) According to the complaint, Mr. Giannini informed Mr. Miles that he could not make a police report, but instead needed to submit a "Client Request" to the Office of Special Investigations ("OSI"). (*Id.*) Mr. Miles states that he did that. (*Id.*) He also alleges that the day after the incident, he reported the alleged assault to defendants David Miles and Kayla Taylor, therapists at MSOP who facilitated Mr. Miles's core group. (*Id.* at ¶¶ 12, 13, 28.)

On May 17, 2019, Mr. Miles alleges he received an unsigned response from OSI, which stated that OSI only pursues felony-level crimes. (*Id.* at ¶ 29.) After consulting with security counselor and defendant Grant Crider,[3] Mr. Miles wrote a client request to the Client Rights Coordinator ("CRC") to ask permission to call the police. (*Id.*) That same day, Mr. Miles filed a complaint with the "Health Facility Complaints", reporting the alleged assault. He alleges that they indicated that they would notify the Moose Lake Police Department and have an officer come take a report from Mr. Miles. (*Id.* at ¶ 30.) However, Mr. Miles asserts that no officer ever came. (*Id.*) That same day, he alleges that he tried to contact the Moose Lake Police Department through his sister. (*Id.* at ¶ 31.) However, according to the complaint,

---

[2] Mr. Miles refers to Mr. Giannini as "Scott Ginnini."
[3] Mr. Miles refers to Mr. Crider as Mr. "Cider."

she learned that he could not make a police report directly to the police department, and instead would need to go through MSOP's OSI. (*Id.*) The next day, May 18, 2019, Mr. Miles alleges he sent another request to OSI, once again reporting his alleged sexual assault and requesting that potential video evidence of the incident be preserved. (*Id.* at ¶ 32.)

On May 23, 2019, Mr. Miles alleges that he was permitted to call the Moose Lake Police Department. However, when he attempted to make a police report about the alleged assault, he asserts that the officer told him he needed to go through OSI. (*Id.* at ¶ 34.) That same day, OSI also responded to Mr. Miles's request that video evidence be preserved. They instructed him to put the request into "HIMS," who could authorize Mr. Miles's request, which he did. (*Id.* at ¶ 35.) On June 5, 2019, HIMS responded to his request, declining to provide Mr. Miles with the footage for security reasons, but stating that the footage would "be preserved pursuant to the policy and regulation of MSOP." (*Id.* at ¶ 36.)

Mr. Miles alleges that he experienced physical and mental distress as a result of the May 15 incident. He states that he was having difficulties "letting go" of the alleged assault, that he felt sick to his stomach and was having headaches, problems sleeping, and problems eating. (*Id.* at ¶ 33.) He was also depressed. (*Id.*) He asserts that he brought this up in his core group therapy on May 21, 2019 but received no response from the group or the group therapists (and co-defendants) David Miles and Ms. Taylor. (*Id.*) Mr. Miles alleges that at a June 6, 2019 core group "check-in," he once again brought up the subject of the alleged assault and the physical and mental problems he was struggling with as a result, but received no feedback. (*Id.* at ¶ 37.)

## II.   ANALYSIS

Mr. Miles seeks relief for damage caused by the alleged assault and MSOP's policies and responses under a number of theories. Specifically, Mr. Miles brings the following causes of action:

- Count 1, against defendant Lloyd Anthony Hartlieb,[4] criminal sexual conduct in violation of Minn. Stat. 609.3451 subd.1 (1);

---

[4] Also known as Lloid Hartley.

- Counts 2, 3, and 4, against defendant Nancy Johnston, the executive director of MSOP, for deliberate indifference and failure to protect through the creation and enforcement of certain MSOP policies;
- Count 5, against defendant Kevin Moser, the director of MSOP, for deliberate indifference and failure to protect;
- Count 6, against defendant Peter Puffer, the clinical director at MSOP, for failure to train therapists, resulting in the denial of proper care and treatment in violation of Minn. Stat. 253B.03 subd.7;
- Counts 7 and 9, against Mr. Giannini and Mr. Crider, respectively, for obstruction of the legal process in violation of Minn. Stat. 609.50 subd.1(1);
- Counts 8 and 10, against Mr. Giannini and Mr. Crider, respectively, for a violation of the Equal Protection Clause for refusing to permit Mr. Miles to call the police and report a crime;
- Counts 11 and 12, against Mr. David Miles and Ms. Taylor, respectively, for deliberate indifference of serious medical needs in violation of Minn. Stat. 253B.03 subd.7;
- Count 13, against defendant Nathan Johnson,[5] the officer at MSOP responsible for the work assignment of the security counselors, for deliberate indifference and failure to protect;
- Count 14, against Mr. Whipple and Mr. Berg, for deliberate indifference and failure to protect;
- Counts 15 and 17, against John Doe OSI Officer and John Doe Police Officer, respectively, for failure to report a crime and obstruction of the legal process in violation of Minn. Stat. 609.50 subd.1(1);
- Counts 16 and 18, against John Doe OSI Officer and John Doe Police Officer, respectively, for a violation of the Equal Protection Clause; and
- Count 19, against Bryce Bogenholm, Moose Lake Police Department Police Chief, for failure to train.

Count 1, against Mr. Hartlieb, was dismissed on August 27, 2019. (Order Adopting Report and Recommendation, ECF No. 24.) All remaining defendants have filed dispositive motions in response to Mr. Miles's allegations.

---

[5] Mr. Miles refers to Mr. Johnson as "Nate Johnson," whose full name is Nathan.

## A.   The MSOP Defendants' Motion to Dismiss

The MSOP Defendants filed a Motion to Dismiss the proceedings against them for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (ECF No. 32.) After careful consideration, the Court recommends that this motion be granted, and Mr. Miles's claims against the MSOP Defendants be dismissed.

### 1.   Standard

Federal Rule of Civil Procedure 12(b)(1) governs dismissal of a complaint for lack of subject-matter jurisdiction. Jurisdiction is "a threshold question," and is properly decided at the outset of litigation, in the interest of judicial economy. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). The plaintiff "bears the burden of proving the existence of subject matter jurisdiction, and we may look at materials outside the pleadings in conducting our review," without applying a summary judgment standard *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019) (citations and quotations omitted). Additionally, the Court accepts all factual allegations in the pleadings as true, and must view them in the light most favorable to the non-moving party. *E.g.*, *Great Rivers Habitat Alliance v. Federal Emergency Management Agency*, 615 F.3d 985, 988 (8th Cir. 2010).

Motions for dismissal for failure to state a claim upon which relief can be granted are governed by Federal Rule of Civil Procedure 12(b)(6). "[A] complaint must contain sufficient factual allegations to '[s]tate a claim to relief that is plausible on its face'" in order to withstand a motion to dismiss under Rule 12(b)(6). *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). While "detailed factual allegations" are not required, the facts contained within a complaint must be specific enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin. Corp.*, 690 F.3d 951, 955 (8th Cir. 2012). It is not enough for a complaint to employ "labels and conclusions," or simply restate the elements— more is required. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most

favorably to the complainant." *Raynor*, 690 F.3d at 955. After careful review, the Court determines that Mr. Miles's pleadings do not meet the standards laid out above.

### 2.    Official Capacity Claims

The Eleventh Amendment provides states immunity from suits brought in federal court. *DeGidio v. Perpich*, 612 F. Supp. 1383, 1388 (D. Minn. 1985) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984)). Sovereign immunity applies in all cases where a citizen attempts to bring claims against a state, unless the state has waived its immunity or Congress has abrogated it. *Id.* at 1388–89.

Sovereign immunity fully protects MSOP from official capacity claims seeking damages. Minnesota has not waived its immunity to suit in cases such as these, and Congress has not abrogated it. *See* Minn. Stat. § 1.05 (waiving immunity for certain claims not presented here); *DeGidio*, 612 F. Supp. at 1389. Therefore, the Court lacks subject matter jurisdiction for the official capacity claims for damages presented here.

Mr. Miles argues that his official capacity claims should be permitted to go forward to the extent that they request a declaratory judgment. But declaratory judgment is not available in this case. The Declaratory Judgment Act, 28 U.S.C. § 2201, creates an action that allows federal courts to "declare the rights of a party whether or not further relief is or could be sought." *Green v. Mansour*, 474 U.S. 64, 72 (1985). Section 2201 gives the Court discretion to enter declaratory judgment, not "an absolute right to the litigant." *Id.* In *Green*, the Supreme Court held that declaratory judgment was not proper where there was no claimed continuing violation of federal law and where the issuance of a declaratory judgment "would have much the same effect as a full-fledged award of damages or restitution by the federal court…." *Id.* at 73. Mr. Miles's requested declaratory relief, which seeks to have this Court declare that the various defendants violated a number of constitutional rights, would result in such a "run around" of Eleventh Amendment immunity. Therefore, declaratory judgment is not available in this case with respect to the official capacity claims.

However, the Court recommends dismissal without prejudice, not with prejudice as the defendants request. "A district court is generally barred from

6

dismissing a case with prejudice it if concludes subject matter jurisdiction is absent." *County of Mille Lacs v. Benjamin*, 361 F.3d 460, 464–65 (8th Cir. 2004). Therefore, dismissal without prejudice of Mr. Miles's official capacity claims is appropriate here.

### 3.    Deliberate Indifference and Failure to Protect

Though MSOP clients are considered "civil detainees," and not prisoners, courts in this district analyze detainees' Fourteenth Amendment claims of failure to protect under the same deliberate indifference standard that is applied to Eighth Amendment claims by prisoners. *See, e.g.*, *Sorenson v. Minnesota Dep't of Human Servs.*, No. 14-cv-4193 (ADM/LIB), 2015 WL 251720 at *6 (D. Minn. Jan. 20, 2015). It is a violation of the Eighth Amendment for a prison official (or, as here, an employee at a state civil commitment facility) to be deliberately indifferent "to the need to protect an inmate from a substantial risk of harm from other [detainees]." *Id.* (citation omitted). A plaintiff pleading deliberate indifference must demonstrate two things: first, that the alleged deprivation of rights was objectively "sufficiently serious," and second, that the defendant, viewed subjectively, had "the requisite culpable state of mind." *Id.* (citing *Irving v. Dormire*, 518 F.3d 441, 446 (8th Cir. 2008)). The alleged deprivation of rights is sufficiently serious when an official's failure to protect causes the plaintiff's confinement to be "under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement of a subjectively culpable state of mind is met when the official "actually knows of the substantial risk and fails to respond reasonably." *Sorenson*, 2015 WL 25172 at *6 (citing *Farmer*, 511 U.S. at 844–45).

### i.    Sufficiently Serious Deprivation

Mr. Miles's failure to protect claims (Counts 2–5, 13, and 14, against defendants Ms. Johnston, Mr. Moser, Mr. Johnson, Mr. Whipple, and Mr. Berg) all fail at the first requirement. "Not every malevolent touch…gives rise to a federal cause of action." *Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998). A brief touch, such as the kind Mr. Miles alleges in his complaint has been found to be insufficient to satisfy the first requirement. *Compare id.* (finding no Eighth Amendment violation when the only inappropriate behavior alleged was a "brief unwanted touch on [the plaintiff's] buttocks.") *with Nelson v. Shuffman*, 603 F.3d 439, 444, 447 (8th Cir. 2010) (finding the

7

first requirement of the deliberate indifference standard met where plaintiff was physically and sexually assaulted after the perpetrator had "subjected staff and residents to a relentless barrage of physical and sexual threats, assaultive and sexually explicit behavior, and related violent and aggressive misconduct."). Clearly, Mr. Miles's allegations that Mr. Hartlieb "grabbed and kneaded [his] right breast" while in a meal line are more analogous to the situation in *Berryhill*. Though completely inappropriate and unwelcome, Mr. Hartlieb's alleged conduct is not objectively "sufficiently serious" to rise to the level of a constitutional violation.

Furthermore, unlike in *Nelson*, Mr. Miles has not alleged any prior threats or assaultive behavior directed at him. Indeed, the only behavior alleged outside of the brief touch by Mr. Hartlieb is that "gay clients at MSOP-ML kiss and grab *at each other*…." (Amend. Compl. ¶ 23 (emphasis added).) Any threat that comes from living with other sex offenders at MSOP has been found by this Court to be "purely speculative," and other courts have found that interaction with gay civil detainees does not plausibly constitute a substantial risk of serious harm to others. *Aune v. Ludeman*, No. 09-cv-15 (JNE/SRN), 2010 WL 135276 at *6 (D. Minn. Jan. 8, 2010); *Blaise v. Smith*, No. C08-4097-MWB, 2009 WL 10698025 at *5 (N.D. Iowa Feb. 9, 2009). Likewise, to the extent that Mr. Miles's Amended Complaint alleged that having to stand in line for meals with clients "identified as Slow Learning or who have Special Needs" posed a risk of serious harm to him, other courts have found that such interactions are insufficient to establish a failure to protect claim. *Id.*; *see also Purvis v. Ponte*, 929 F.2d 822, 826 (1st Cir. 1991).

### ii. Subjectively Culpable State of Mind

Mr. Miles's failure to protect claims fail on the second prong as well. An official is deliberately indifferent in a constitutionally cognizable way when they actually know of the substantial risk and fail to respond appropriately. *Farmer*, 511 U.S. at 844–45. Mr. Miles has not pleaded such facts at all within his amended complaint. He does not allege that any MSOP Defendant knew of a substantial risk of serious harm to him. Nor does Mr. Miles allege that he informed any defendant that he felt threatened by Mr. Hartlieb or any other client at MSOP. Therefore, Mr. Miles fails to state a claim of deliberate indifference. *See Sorenson*, 2015 WL 251720 at *11; *see also Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (affirming dismissal of a

8

failure to protect claim where the plaintiff had not informed any prison officials that he had felt threatened).

### iii. Ms. Johnston and Mr. Moser

In addition to the broad pleading failures discussed above, the MSOP Defendants contend that Mr. Miles has failed to plead sufficient personal involvement with respect to defendants Ms. Johnston and Mr. Moser. The Court agrees. A plaintiff must allege something beyond an individual's general responsibility for supervising operations at an institution or authority to implement policies in order to create liability for that defendant. *E.g.*, *Bishop v. Jesson*, No. 14-cv-1898 (ADM/SER), 2016 WL 8674584 at *14 (D. Minn. Feb. 12, 2016), *report and recommendation adopted*, No. 14-cv-1898 (ADM/SER), 2016 WL 906422 (D. Minn. Mar. 9, 2016) (finding that general allegations that Nancy Johnston, as MSOP's Executive Director, had a responsibility to supervise its operations and that she had authority to retain and carry out policies were insufficient to demonstrate personal liability). Here, Mr. Miles has only made general supervisory allegations against Ms. Johnston and Mr. Moser. Specifically, he alleged that Ms. Johnston "failed to create and enforce a policy and procedure that would keep [him] safe from sexual assault…." (Amend. Compl. ¶ 7.) Against Mr. Moser, Mr. Miles makes only the general conclusion that he "is responsible for the daily operations of MSOP," and that he "failed to protect [him] from sexual assault…." (Amend. Compl. ¶ 8.) These are the type of general allegations that are insufficient to state a claim against an individual. *E.g.*, *Bishop*, 2016 WL 8674584 at *14.

In sum, none of Mr. Miles's failure to protect claims against the MSOP Defendants survive Rule 12(b)(6) review. They should be dismissed for failure to state a claim upon which relief can be granted.

### 4. Equal Protection

The MSOP Defendants argue that Mr. Miles's equal protection claims, Counts 8, 10, 16, and 18, should also be dismissed for failure to state a claim. The Court agrees. The Equal Protection Clause of the Fourteenth Amendment provides in relevant part that no state shall "deny any person within its jurisdiction the equal

9

protection of the laws." U.S. Const. amend. XIV. To succeed on an equal protection claim, a plaintiff must demonstrate that they have been treated differently from other similarly situated individuals by a state actor. *E.g.*, *Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir. 2000). This is a threshold showing; without it, an equal protection claim cannot survive. *Klinger v. Dep't of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994).

Here, Mr. Miles does not meet this threshold. His equal protection claims are based on the allegation that defendants Mr. Giannini and Mr. Crider violated his right to equal protection under the law when they refused to permit him to call the police to report the alleged sexual assault. However, Mr. Miles does not allege that he was treated differently than any other similarly situated person. Mr. Miles, in his response, argues that as a civil detainee he is "similarly situated to every other citizen…," but this is simply not true. The Eighth Circuit has determined that MSOP's civil detainees are most similar to pretrial detainees, not free citizens, for the purposes of assessing constitutional protection. *Serna v. Goodno*, 567 F.3d 944, 948 (8th Cir. 2009). And regardless of who Mr. Miles is similarly situated to, the complaint is devoid of an allegation that he was treated differently from anybody else.

Mr. Miles's allegation that defendant John Doe OSI violated the Equal Protection Clause when he allegedly failed to report the alleged sexual assault to the Moose Lake Police Department fails for the same reasons. Because Mr. Miles does not meet the threshold pleading standard of an equal protection claim, those claims should be dismissed.

### 5. Failure to Train (Count 6), Deliberate Indifference to Serious Medical Needs (Counts 11 and 12), and State Law Claims (Counts 4, 6, 7, 9, 11, 12, and 15)

The MSOP Defendants argue that Counts 6, 11, and 12, should be dismissed for failure to state a claim and that Counts 4, 6, 7, 9, 11, 12, and 15, insofar as they allege state law claims against the MSOP Defendants in their official capacities, should be dismissed for lack of jurisdiction under the Eleventh Amendment. They further argue that the Court should decline to exercise supplemental jurisdiction over the state law claims within those Counts. Mr. Miles, in his response memorandum,

agreed with the defendants, conceding these specific claims. (Pltf. Resp., ECF No. 38, at 9–12.) Therefore, the Court recommends that they be dismissed.

### 6. Punitive Damages

Mr. Miles includes in his prayer for relief a request for punitive damages. Such a request can only survive a motion for dismissal if the plaintiff has alleged facts that would justify an award of punitive damages. *Cameron v. Whirlwindhorse*, 494 F.2d 110, 113–14 (8th Cir. 1974). In a § 1983 case, punitive damages are appropriate "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Walters v. Grossheim*, 990 F.2d 381, 385 (8th Cir. 1993) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983). The allegations in Mr. Miles's complaint cannot meet this high standard. Nowhere has he alleged any specific facts that would support punitive damages. Therefore, the punitive damages claims should be dismissed.

### 7. Qualified Immunity

Though the Court recommends that Mr. Miles's allegations be dismissed for the reasons stated above, it also finds that the defendants are entitled to qualified immunity. With certain exceptions, state actors performing discretionary functions benefit from qualified immunity that protects them from civil liability. Courts consider two factors when determining if qualified immunity should apply: (1) whether the facts as alleged (or demonstrated), construed in the light most favorable to the plaintiff, establish a violation of a constitutional right; and (2) whether that constitutional right was clearly established at the time of the violation. *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013). Here, the defendants are entitled to qualified immunity because, as discussed in detail above, the facts as alleged do not establish a violation of a constitutional right.

In sum, none of the claims Mr. Miles alleges against the MSOP Defendants can survive the defendants' Motion to Dismiss. Accordingly, the Court recommends that the claims be dismissed in their entirety.

### B. The Moose Lake Defendants' Motion for Judgment on the Pleadings

11

The Moose Lake Defendants, who are implicated in claims 17, 18, and 19 answered Mr. Miles's complaint, and filed a Motion for Judgment on the Pleadings. (ECF No. 50.) After careful consideration, the Court recommends that the Moose Lake Defendants' motion be GRANTED.

### 1.     Standard

To successfully move for judgment on the pleadings, the movant must "clearly establish" that there are no material issues of fact. *Levitt v. Merck & Co., Inc.*, 914 F.3d 1169, 1171 (8th Cir. 2019). At this early pleading stage, the standard for a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is essentially the same as the standard for a motion to dismiss under Rule 12(b)(6). *Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The court must accept as true all facts as pleaded and construe the complaint in the light most favorable to the plaintiff. *Id.* Even under this liberal standard, Mr. Miles's Complaint does not survive.

### 2.     State Law Claims (Count 17) and Failure to Train (Count 19)

The Moose Lake Defendants argue that Mr. Miles's state law claims in Count 17 and the failure-to-train claim in Count 19 should be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. In Mr. Mile's response, he agreed and conceded those claims. (Pltf. Resp., ECF No. 60 at 4, 9.) Therefore, the Court recommends that these claims be dismissed.

### 3.     Equal Protection (Count 18)

Mr. Miles's equal protection claim against John Doe Police Officer fails for the same reason that his equal protection claim fails against the MSOP Defendants. An equal protection claim requires proof that the plaintiff was treated differently than other similarly-situated individuals by state actors. *Bogren*, 236 F.3d at 408; *Klinger*, 31 F.3d at 731. Mr. Miles alleges that his right to equal protection under the law was violated by John Doe Police Officer because he was not permitted to file a report after the alleged May 15, 2019 assault. However, Mr. Miles has not alleged that he was treated differently than any other similarly-situated individual. Because this is a

threshold requirement of an equal protection claim, *see Klinger*, 31 F.3d at 731, this flaw is fatal to Mr. Miles's complaint.

In sum, Mr. Miles has not adequately pleaded the single claim he has not conceded against the Moose Lake Defendants. Accordingly, the Court recommends that this claim be dismissed.

### III.  Recommendation

Mr. Miles's Amended Complaint cannot overcome the dispositive motions filed by the defendants. Accordingly, IT IS HEREBY RECOMMENDED THAT:

1. The MSOP Defendants' Motion to Dismiss (ECF No. 29) be GRANTED.
2. The Moose Lake Defendants' Motion for Judgment on the Pleadings (ECF No. 50) be GRANTED.
3. Mr. Miles's Amended Complaint be DISMISSED in its entirety.
    a. All claims dismissed for lack of subject matter jurisdiction should be dismissed without prejudice.
    b. All remaining claims should be dismissed with prejudice.

Date: April 6, 2020               *s/Katherine Menendez*
                                  Katherine Menendez
                                  United States Magistrate Judge

### NOTICE

Filing Objections: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

14

Under Advisement Date: This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.